**MONSANTO COMPANY, Plaintiff,**

v.

**EDWARDS TOWING CORPORATION, Defendant and Third-Party Plaintiff,**

v.

**ALTER COMPANY, a corporation, Third-Party Defendant and Third-Party Plaintiff,**

v.

**FEDERAL BARGE LINES, INC., Third-Party Defendant.**

**No. 67A 237(1).**

United States District Court, E. D. Missouri, E. D.

July 10, 1969.

**14**

Goldstein & Price, St. Louis, Mo., for plaintiff.

John C. Shepherd and Evans & Dixon, St. Louis, Mo., for defendant.

Dominic Troiani and Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Alter Co.

Lucas & Murphy, St. Louis, Mo., for Federal Barge Lines.

## MEMORANDUM OPINION

HARPER, Chief Judge.

The plaintiff, Monsanto Company (hereinafter referred to as Monsanto), a Delaware corporation with its principal office in St. Louis, Missouri, brought this action in admiralty against the defendant, Edwards Towing Company (hereinafter referred to as Edwards), a Missouri corporation, seeking to recover for damages to its dock which it sustained on July 29, 1966, when its dock facility located on the Illinois side of the Mississippi River in the St. Louis Harbor was struck by four loaded barges (AGS–116, AGS–132, AGS–105 and AGS–114), which barges broke loose from the lower load fleet which was being operated by defendant Edwards.

Edwards filed its answer admitting the breakaway, but denying negligence on its part, and also filed a third-party complaint against Alter Towing Company (hereinafter referred to as Alter). Alter's M/V BEVERLY ANN, approximately four hours prior to the breakaway, tied barges AGS–105 and AGS–115 in the Edwards' fleet alongside barges AGS–116 and AGS–132. Edwards' third-party complaint alleged that the crew of the M/V BEVERLY ANN were negligent in that they failed to adequately secure said barges when placed in the fleet and failed to inspect and strengthen the mooring of the barges in the fleet at the time it added the two barges.

Alter filed answer to the third-party complaint, admitting the breakaway, but denying any negligence on its part, and also filed a third-party complaint against Federal Barge Lines, Inc. (hereinafter referred to as Federal), the owner of the M/V MISSOURI, and alleged that the M/V MISSOURI passed the Edwards' fleet immediately prior to the breakaway at an unreasonable speed and in close proximity thereto, causing the barges to break away from their mooring.

Federal in its answer denied that the M/V MISSOURI passed the Edwards fleet at an unreasonable speed or so close to it as to contribute to the breakaway.

Prior to the trial all parties agreed that Monsanto suffered damages in the amount of $18,756.00.

This action was timely filed and this court has jurisdiction in admiralty. The facts are before the court by way of oral testimony, stipulation of facts, various exhibits and the answer to certain interrogatories.

The defendant Edwards operates a fleeting facility on the Illinois side of the upper Mississippi River below the MacArthur Bridge in the St. Louis area. The breakaway of the barges in question occurred about 3,000 feet below the MacArthur Bridge. Barges AGS–116 and AGS–132 had been moored by Edwards to the fleet barge on July 27, 1967. On July 29, 1967, at about 3:45 a. m. Central Standard Time, the M/V BEVERLY ANN operated by the Alter barge brought the two loaded barges AGS–105 and AGS–114 to the fleet and moored them to the outside of barges AGS–116 and AGS–132.

The testimony of the various witnesses varies considerably with respect to time, but this is explained by the fact that the BEVERLY ANN was operating on Central Standard Time, while the other witnesses were referring to Daylight Saving Time.

Somewhere around eight to eight-thirty o'clock a. m. on the morning of July 29th, the four barges in question broke loose from the fleet barge, the mooring between AGS–116 and the fleet barge being parted in the breakaway. The four barges in question floated down the river tied together, and struck the dock of Monsanto, causing the damage involved.

■ It has long been established that the burden is upon a drifting vessel to show her freedom from negligence. The Louisiana, 3 Wall. 164 (70 U.S.), 18 L.Ed. 85. The Supreme Court in The

Oregon, 158 U.S. 186, 15 S.Ct. 804, 39 L.Ed. 943, held that there is a presumption. of fault when there is a collision with a vessel lying at anchor. The operator of a fleeting facility as a bailee has the responsibility of caring for barges after they are committed to its custody. Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89. A breakaway establishes a prima facie case of negligence against the moving vessel. Commercial Molasses Corp. v. New York Tank Barge Corp., supra; Mid-America Transportation v. St. Louis Barge Fleeting Service, Inc., ·229 F.Supp. 409 (D.C.E.D.Mo.), aff'd 8 Cir., 348 F.2d 920; John I. Hay Co. v. The Allen B. Wood, D.C., 121 F. Supp. 704, aff'd Martin Oil Service v. John I. Hay Co., 5 Cir., 219 F.2d 237.

■ And so the facts in this case under the law are sufficient to establish a prima facie case of negligence against Edwards.

The testimony discloses that shortly before the two Edwards barges were tied into the fleet, the crew of the M/V BARBARA BELLE, belonging to Edwards, checked the fleet. While Floyd Gibson, the pilot of the BARBARA BELLE, testified that he personally inspected the wires on the two barges and found them secured, he could not recall whether the wires were seven-eighths of an inch or three-fourths of an inch. He further testified that the Edwards pilots were informed that there was to be a rise in the river and that in a rising river slack should be taken out of the fleet wires. He further testified that a rise of 3.4 feet in the river would eventually wash the barges out unless the slack was taken out of the wires.

There was testimony to the effect that at four o'clock a. m. that morning there was a river forecast, which Robert Carroll, the pilot of the M/V BEVERLY ANN, heard on the radio, which forecast advised of a rather big rise in the river, and the evidence introduced in the record from the United States Corps of Engineers shows a 3.4 foot rise in the river in the twenty-four hour period

from July 28th to July 29th, but does not fix the time it occurred.

■ When a towboat disturbs a fleet of barges in order to moor a barge it is bound to properly fasten the barge it delivers. John I. Hay v. The Allen B. Wood, supra, and The Norwich Victory, D.C., 77 F.Supp. 264, aff'd United States v. Dump Scows No. 116, No. 120 and No. 122, 3 Cir., 175 F.2d 556, cert. den. American Dredging Co. v. United States, 338 U.S. 871, 70 S.Ct. 147, 94 L. Ed. 534.

Edwards instead of showing specific acts of negligence on the part of Alter's M/V BEVERLY ANN, has relied upon the rule that where a motor vessel moors unmanned barges and a short time thereafter they are adrift, the drifting presumably establishes fault on the part of the mooring vessel, as set out in *The Norwich Victory*, supra.

There was no proof of negligence on the part of the mooring of the two barges by the M/V BEVERLY ANN to the other two barges in the fleet. The testimony discloses that they were properly moored to the other two barges, as is well illustrated by the fact that they drifted down the river moored together. The testimony further discloses that the crew of the M/V BEVERLY ANN inspected the mooring to the fleet barge when the two barges were moored to the fleet and found that it was proper.

The circumstances of this case rebut a presumption of fault on the part of the mooring by the M/V BEVERLY ANN of the two barges, as the circumstances in this case are far from normal. At about the time of the mooring of the two barges in the fleet there was a broadcast to the effect that there was to be a rather big rise in the river. The pilot Gibson of the M/V BARBARA BELLE testified that the Edwards' pilots were informed of such fact; he further knew that a rising river required that slack should be taken out of the fleet wires and that a rise of 3.4 feet would eventually wash the barges out unless the slack was taken out of the wires. Unmindful of this fact, nothing was done by Edwards after being informed of the coming rise in the river to take care of a situation which was anticipated, and which developed. This evidence completely rebuts the presumption of negligence against Alter and there is no showing of negligence on Alter's part.

The testimony further discloses that after the two barges were tied in the fleet by Edwards, its motor vessel, the BEVERLY ANN, was working the area of the fleet on the Illinois side of the Mississippi River. The M/V EMILY JEAN passed the BEVERLY ANN going downstream. Shortly thereafter, the M/V MISSOURI, owned by Federal, proceeded upstream past the BEVERLY ANN, and the pilot of the BEVERLY ANN stated that the M/V MISSOURI came past at five to six miles an hour and caused his boat and barges to bounce around. He admitted he did not see the M/V MISSOURI when it passed the area of the breakaway and had no idea of its speed and location in the river at that point.

An entry in the log of the M/V BEVERLY ANN is as follows:

"M/V MISSOURI & EMILY JEAN both passed fleet—4 AGS loads broke loose—hit Monsanto Chem. dock before they were caught."

The pilot Carroll further testified that he did not know the location of the M/V EMILY JEAN when the M/V MISSOURI passed. The captain of the M/V MISSOURI testified that at 6:50 a.m. Central Daylight Time the M/V MISSOURI departed the Lesperance Street fleet at Mile 178 on the Missouri side of the river and arrived at Lock and Dam #27 at Mile 185 at 8:10 a.m. He further testified that when the M/V MISSOURI left the Lesperance Street fleet he proceeded up the Missouri shore until he was in the vicinity of the Mississippi Valley dock and then proceeded across the Mississippi River in a diagonal path so as to reach the Illinois side, which was necessary because of the construction of the Poplar Street Bridge. He reached the Illinois side

near a black buoy that was approximately 1,000 feet below the MacArthur Bridge some 2,000 feet above the breakaway. He further testified that he was running at a moderate speed. The evidence further discloses he was not on the Illinois side of the river when he passed the Edwards fleet where the breakaway occurred, and that when the M/V EMILY JEAN and the M/V MISSOURI passed one another the M/V EMILY JEAN was on the Illinois side of the river. Captain Fisher further testified that until he was above the MacArthur Bridge he was running at a moderate speed, since his deck crew was still out on the tow putting on the hard rigging wires for river towing, and until his crew completed this work it would be dangerous to proceed at full speed.

■■ A moving vessel is responsible for breakaways only if it causes unreasonable or excessive swells in passing moored vessels. To be liable the vessel must be traveling in an unreasonable manner. The Robert Fulton, 2 Cir., 187 F. 107.

■ There is no testimony that shows the speed of the M/V MISSOURI when it passed the point of the breakaway or that at that point it was on the Illinois side of the river. The testimony discloses no negligence on the part of the M/V MISSOURI where the breakaway occurred.

For the foregoing reasons this court finds that Edwards was negligent in failing to properly care for its fleet and that a prima facie case was made against Edwards by the breakaway. This court fails to find any proof of negligence on the part of the third-party defendants Alter or Federal.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the clerk is directed to prepare and enter the proper order in favor of the plaintiff, Monsanto Company, and against the defendant, Edwards Towing Company, in the sum of $18,756.00, and in favor of third-party defendants, Alter Towing Company and Federal Barge Lines, Inc., on the third-party complaints.