**PASCO MARKETING, INC., a corporation, Appellee,**

v.

**TAYLOR TOWING SERVICE, INC., a corp., Appellee,**

**and**

**Security Barge Line, Inc., a corp., Appellant.**

**No. 76–1350.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1977.

Decided March 11, 1977.

As Amended on Denial of Rehearing and Rehearing En Banc May 13, 1977.

Michael D. O'Keefe, Thompson & Mitchell, St. Louis, Mo., made argument, filed appearance, filed appendix and briefs for appellant.

C. Perry Bascom (argued), Robert G. Brady and David S. Slavkin, St. Louis, Mo., on brief, for appellee, Pasco, Inc.

Bryon D. Luber, Caruthersville, Mo., made argument and filed appearance for appellee, Taylor Towing; James E. Reeves, Caruthersville, Mo., on brief.

Before LAY, ROSS and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

A dock near New Madrid, Missouri, owned by Pasco Marketing, Inc., was damaged when two barges (CW–7 and SR–354) owned by Security Barge Line, Inc., struck it on January 29, 1973. Security had contracted with Taylor Towing Service, Inc., to tow the barges to Noranda Aluminum Company's dock at New Madrid. If the Noranda dock was full Taylor Towing would tie the barges to a tree downstream and move them at Noranda's order to the latter's dock. Security paid Taylor Towing $125 for the first tow. When it was necessary to moor the barges to a tree and later move them to the Noranda dock, Noranda paid Taylor Towing an additional $75. If Security so requested Taylor Towing would return the barges to Security for another $125.

On January 26, 1973, Taylor Towing took the two barges off of Security's tow. Noranda's dock was not available so Taylor Towing moored the barges to trees along the riverbank. On January 29, 1973, for some unexplained reason, the cable broke and the two barges drifted downstream where they collided with Pasco's dock.

Pasco brought suit in admiralty claiming damages to its dock. It named both Security and Taylor Towing as defendants. Security cross-claimed for indemnity from Taylor Towing alleging that Taylor Towing warranted that it would detach and fleet the barges in a workmanlike manner and therefore any damage was caused by Taylor Towing's negligence and breach of its warranty of workmanlike service.

The district court found no fault on the part of Taylor Towing and awarded judgment for Pasco and against Security in the sum of $36,250. The district court denied Security's claim for indemnity against Taylor Towing. *Pasco Marketing, Inc., v. Taylor Towing Service, Inc.*, 411 F.Supp. 808 (E.D.Mo.1976).

On appeal Security argues that its arrangement with Taylor Towing was a bailment and Security was therefore not liable to Pasco, or, if liable, that Taylor Towing should indemnify Security. It also contends that the district court's assessment of damages was erroneous. Pasco has not appealed the finding of no fault on the part of Taylor Towing.

*Security's Liability.*

■ The district court found that when a collision is caused by a vessel drifting from her moorings, the moving vessel is presumed to be at fault until the presumption is offset by affirmative proof that absolves her. *See The Louisiana*, 70 U.S. (3 Wall.) 164, 173, 18 L.Ed. 85 (1865). Under the presumption all parties agree that Security had the burden of proving exoneration from liability.

Security attempted to offset the presumption by establishing that Taylor Towing was a bailee, not a contractor for towage, and that reasonable implications from the agreement required Taylor Towing's continuing care of the barges while they were tied to the trees because they were still waiting their final destination.

■ The district court found no bailment because Taylor Towing did not assume con-

tinuing custody or control of the barges, but only provided their propulsion. This finding is supported by the evidence.

■ Security, an absent owner, was in constructive custody of the barges. It failed to come forward with any evidence to exonerate it from responsibility from the broken mooring, and it remains liable to Pasco for the damage caused.

*Taylor's Liability.*

Since Pasco has not appealed the exoneration of Taylor Towing from liability, we do not discuss the evidence as it affects this finding.

*Security's Cross-claim.*

By reason of the failure of Pasco or Security to prove any negligence of Taylor Towing, the district court reasoned that Taylor Towing was not liable to Security on the latter's cross-claim for indemnity. We cannot agree.

The evidence is undisputed that broken cable, not improper mooring, caused the barges to break loose. The seven-eighths or one inch cable used was allegedly owned by Security, but Taylor Towing admitted it had taken it from other Security barges and had used it in the past to moor tows. The barges here had been secured on January 26, 1973, and the cable broke three days later. There was no evidence of high water or inclement weather which may have caused the barges to break loose.

It is true that there is no affirmative evidence that Taylor Towing was negligent. There is no evidence that the barges were improperly moored to the tree (*cf. Dow Chemical Co. v. Barge UM–23B*, 424 F.2d 307 (5th Cir. 1970)), or that Taylor Towing had any continuing duty to exercise due care to safeguard the barges while they were temporarily moored at the trees. *Cf. Thorne, Neale & Co. v. Reading Co.*, 87 F.2d 694 (2d Cir. 1937). Nor is there affirmative evidence that Taylor Towing improperly in-

spected the mooring after it was secured. In fact, the trial court specifically found that Taylor Towing had properly inspected the mooring. However, we think this latter finding crucial to the question of whether Security may obtain indemnity against Taylor Towing.

■ A tug, of course, would be at fault if it inadequately secured a barge. This would be so whether it was performing under a towage contract or under a bailment. In this context, a tug using a cable which it knew was defective or weak, and regardless of who owned it, would be responsible for its tow going adrift just as if it had failed to tie or secure the tow. The recognized rule has long been that a tug is bound to properly moor and make fast an unmanned barge it delivers, and that drifting which occurs within a short time thereafter, presumptively establishes fault on the part of the mooring vessel. *See Monsanto Co. v. Edwards Towing Corp.*, 318 F.Supp. 13 (E.D.Mo.1969); *The Norwich Victory*, 77 F.Supp. 264 (E.D.Pa.1948), *aff'd sub nom., United States v. Dump Scows No. 116, No. 120 and No. 122*, 175 F.2d 556 (3d Cir.), *cert. denied, American Dredging Co. v. United States*, 338 U.S. 871, 70 S.Ct. 147, 94 L.Ed. 534 (1949). When this presumption operates the duty of producing evidence shifts to the mooring vessel to show that it exercised the due care required of it.[1]

Thus, as we view the record, as between Security, the owner, and Taylor Towing, the mooring vessel, this presumption of fault is applicable unless, as the trial judge found, the barges were properly secured and the moorings inspected before Taylor Towing left them unmanned.

■ The difficulty we have with the present record is that Paul S. Taylor, the owner of Taylor Towing, was the only witness for the tug and his proof is highly inconclusive as to whether on January 26, 1973, the mooring was secured and whether the cable was adequate to hold the barges.

---

1. See *Mid-America Transp. Co., Inc., v. National Marine Service, Inc.*, 497 F.2d 776 (1974) for Judge Talbot Smith's excellent discussion of the effect of the presumption in admiralty cases.

He conceded that it was the duty of the tow to adequately secure the barges and to inspect the cable. His testimony reflects only that on the date in question he thought his employees had met this duty. In fact, Taylor was not present when the barges were moored. We hold the finding of the district court that the mooring was secure and adequately inspected by Taylor Towing is without support in the record and is clearly erroneous. The record is barren on this issue. It is true that Security did not affirmatively prove that there was not an inspection. However, under the presumption, Taylor Towing, as the mooring vessel, had the burden to come forward with evidence showing that it had properly moored and inspected the line. This it failed to do.

▮ Under the circumstances, although in its defense against Pasco, Security failed to prove that Taylor Towing was at fault, nonetheless as between the tug and the tow, under the cross-claim, the mooring tug was required to show that it was not at fault. Since it failed in this, we find that Security may hold Taylor Towing for indemnity. Security's fault, as the distant owner, is merely passive in comparison to the more active role of the tug. Under the circumstances, as between the two, the mooring vessel is the best party to assume the ultimate fault.

We find the trial court's award of damage not clearly erroneous.

The judgment against Security and for Pasco is affirmed; the judgment on the cross-claim against Security and for Taylor Towing is reversed; and the cause is remanded to allow indemnity for the amount of the judgment against Taylor Towing and for costs and attorney fees.

WEBSTER, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the judgment in favor of Pasco, the injured dock owner, against Security, owner of the barges, should be affirmed.

I disagree, however, with its conclusion that Security is entitled to indemnity from Taylor Towing. The majority opinion states:

Under the circumstances, although in its defense against Pasco, Security failed to prove that Taylor Towing was at fault, nonetheless as between the tug and the tow, under the cross-claim, the mooring tug was required to show that it was not at fault.

I respectfully disagree.

The District Court found that the barge had been moored to the shore in a seamanlike manner. It is undisputed that the barge was moored to a tree and that it remained at its mooring for three days. There is simply no basis for holding the District Court's finding to be clearly erroneous. There was no evidence to the contrary unless it be found in a presumption arising from the barge going adrift.

Cases relied upon by the majority are not persuasive and are readily distinguishable. In *Monsanto Co. v. Edwards Towing Corp.*, 318 F.Supp. 13 (E.D.Mo.1969), the barge came adrift in less than five hours. In *The Norwich Victory*, 77 F.Supp. 264 (E.D.Pa. 1948), *aff'd sub nom.*, *United States v. Dump Scows No. 116, No. 120 and No. 122*, 175 F.2d 556 (3d Cir.), *cert. denied, American Dredging Co. v. United States*, 338 U.S. 871, 70 S.Ct. 147, 94 L.Ed. 534 (1949), the time interval was three or four hours. The majority cites no authority for extending a presumption of fact arising from drifting "a short time" after mooring [1] to a period of three days. The functional reliability which might support a presumption for four hours is certainly dissipated after three days. Once the barges had been properly moored, the duty of the tower was at an

---

1. My own view is that drifting after even a "short time" creates no more than a permissible inference of negligence, especially where there is no bailment, but I will assume the law of presumptions is applicable here. Case authority is very scanty and even the two cases cited by the majority are based in part upon other circumstances present in the respective cases.

end.[2] The burden was upon Security to prove a breach of that duty. No other physical evidence was advanced; Security's case for indemnity stands or falls upon the claimed presumption of negligence. It was for the District Court to weigh the effect of that presumption in the light of the three-day interval between mooring and drifting together with the other facts and circumstances in the case. The Court was not persuaded that Security had met its burden; I cannot say that its finding was clearly erroneous. To the contrary, in my view it would have warranted reversal to have bottomed indemnity upon so slender a reed.

I would affirm the District Court in all respects.

2. Any duty of inspection must therefore have been in connection with the mooring, and not subsequent thereto. In *Monsanto Co. v. Edwards Towing Corp., supra,* by way of contrast, the barges were moored in a fleet mooring operated by the tower when they went adrift; hence the duty of inspection was a continuing one.