**E. I. DuPONT DE NEMOURS & COMPANY,**

v.

**RIVERWAY HARBOR SERVICE ST. LOUIS, INC., Defendant-Appellee,**

**Commercial Transport Corporation, American Commercial Barge Line Company, Defendants-Appellants, Defendants-Appellees,**

**Phillips Pipeline Company, Defendant-Appellant.**

**Nos. 80–1190, 80–1235.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1980.

Decided Jan. 23, 1981.

John S. Sandberg, Shepherd, Sandberg & Phoenix, St. Louis, Mo., for defendant-appellant Phillips Pipeline Co.

Gary T. Sacks, St. Louis, Mo., for defendant-appellee Riverway Harbor Service St. Louis, Inc.

R. J. Robertson, Jr., St. Louis, Mo., for defendants-appellants, defendants-appellees Commercial Transport Corp. and American Commercial Barge Line Co.

Before HEANEY, STEPHENSON and ADAMS,* Circuit Judges.

ADAMS, Circuit Judge.

This appeal presents a single issue: whether the district court, in a case arising under federal maritime law, abused its discretion in awarding attorneys' fees to passively negligent defendants who were forced to defend the lawsuit because of the active negligence of another party. The court concluded that the acts of the passively negligent or secondarily liable appellees at most set the conditions for the destruction of a cargo of methanol, while the actively negligent unloading of the methanol by appellant was the necessary cause of the cargo's loss. Consequently, judgment was entered in favor of the secondarily liable parties and against the primarily liable party on the initial complaint. Further, the court held that the actively negligent tortfeasor should indemnify the passive tortfeasors for the costs incurred in defending the lawsuit, and that such indemnification should include reasonable attorneys' fees. We hold that the district court did not

abuse its discretion in awarding the attorneys' fees, and therefore affirm.

The issue arises from a suit by plaintiff E. I. DuPont de Nemours, Inc. (DuPont), the owner of the destroyed methanol, against three defendants—Phillips Pipeline Company (Phillips), the recipient and discharger of the cargo; Riverway Harbor Service St. Louis, Inc. (Riverway), the deliverer of the goods; and Commercial Transport Corporation and American Commercial Barge Line Company (collectively, Commercial)—to recover damages to DuPont's cargo. Commercial, the barge owner and carrier of the methanol, cross-claimed against Riverway, which operated a harbor service in the St. Louis area, seeking attorneys' fees and costs. Riverway, in turn, filed a cross-claim against Phillips to recover attorneys' fees and costs incurred in defending the lawsuit. Prior to trial, the parties stipulated that DuPont was entitled to a judgment of $146,397. The case was tried solely to determine which of the defendants was liable to DuPont, and then addressed the liability *inter se* on the cross-claims for attorneys' fees.

The facts are clear, and are not disputed by the parties. Commercial, pursuant to a contract with DuPont, transported plaintiff's methanol up the Mississippi River to St. Louis via barge CHEM 42. The Du-Pont-Commercial contract allowed Commercial to subcontract with other shippers in transporting the methanol to its destination, although Commercial was to remain liable to DuPont for any negligence by its subcontractors. On March 1, 1977 Commercial delivered CHEM 42 to Riverway, whose responsibility was to convey it to J. D. Streett [1] on a "will advise" basis, meaning that Streett would call Riverway and notify Riverway with respect to the specifics of delivery. The contract between Commercial and Riverway provided for indemnification to Commercial for any liability found to result from Riverway's negligence.

---

* The Honorable Arlin M. Adams, United States Court of Appeals for the Third Circuit, sitting by designation.

1. Streett Industries, Inc., St. Louis, Missouri, was found to be the proper destination, under the Commercial-Riverway contract, for barge CHEM 42 containing the methanol.

Commercial also owned barge CHEM 24, which was loaded with natural gasoline destined for Phillips' St. Louis facility. CHEM 24 arrived in St. Louis on March 7 and was likewise delivered to Riverway for final handling. Commercial informed Phillips that CHEM 24, the barge with the gasoline, was in St. Louis awaiting delivery. When Phillips called Riverway, however, Phillips requested delivery of CHEM 42. Although Riverway indicated that it understood that Phillips was to receive CHEM 24—and in fact questioned Phillips as to whether it did not actually want CHEM 24—Phillips reiterated that CHEM 42 should be delivered. Because destination changes before delivery are not uncommon, Riverway, following its normal practice, simply delivered CHEM 42 to Phillips without consulting the barge owner, Commercial.

When CHEM 42 arrived at Phillips' facility, Phillips' dockman notified his supervisor of the discrepancy between the delivered barge 42 and the expected barge 24. The supervisor told the dockman to determine whether the cargo "smelled and looked like natural gasoline." Despite the dockman's inability to distinguish methanol from natural gasoline by simple sight or smell, he reported positively that the cargo looked and smelled like gasoline. Consequently, Phillips pumped the cargo, which was actually methanol, into a storage tank which contained base gasoline, thus destroying the methanol in the mixing process.

The district court held that Commercial was not negligent and the Riverway was only slightly negligent in not checking with Commercial before delivering barge CHEM 42 to Phillips. The court, however, concluded that the negligence of Phillips in its wrongful discharge of the cargo was the sole cause of the destruction of the methanol. The district court awarded judgment on DuPont's complaint against Phillips and in favor of Commercial and Riverway. It also ruled that it would direct Phillips to reimburse Commercial and Riverway for the costs and attorneys' fees that they had incurred in connection with the lawsuit.

Phillips has limited its appeal to the propriety of awarding Commercial and Riverway their attorneys' fees. After oral argument, we remanded the matter to the district court in order that it might determine the amount of the counsel fees before we ruled finally on the appeals. On November 7, 1980, the district court entered an order fixing the counsel fee for Commercial at $11,792.55 and for Riverway at $14,723.13.

An accepted postulate in American jurisprudence is that, absent a statutory or explicit contractual provision, the prevailing party is not entitled to collect a reasonable attorneys' fee from the loser. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Admiralty courts, though, have historically been guided by the aphorism that "[t]hough the court is said to lack the 'jurisdiction' of equity, it may apply equitable principles to the subjects within its jurisdiction."[2] More recently, the Supreme Court, in a case which addressed the right of a seaman to recover the amount of counsel fees expended in his suit for maintenance and cure, unambiguously noted that "[e]quity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief," and concluded by observing that "[c]ounsel fees have been awarded in equity actions." *Vaughan v. Atkinson*, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962).

It is clear, moreover, that prior to *Vaughan* and even predating *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), which established a right to indemnity on a contractual theory, federal maritime law had recognized a right to indemnity in tort where the parties were not *in pari delicto*. See *Tri-State Oil Tool Industries v. Delta Marine Drilling Co.*, 410 F.2d 178, 183 (5th Cir. 1969); 2 Benedict on Admiralty (6 ed.), § 349, pp. 534–35 and nn. 24–26. In *Tri-*

---

**2.** G. Gilmore & C. Black, *The Law of Admiralty*, 41 (2 ed. 1975). It should be noted that the modern procedural unification of admiralty with the ordinary civil action may, as a matter of law, make equitable remedies freely available in admiralty.

*State*, an injured drilling crewman filed a claim under the Jones Act and general maritime law against his employer, Delta Marine, the owner of the drilling barge, and against Tri-State, a service contractor who provided equipment for the barge. Delta Marine contended that it was entitled to indemnity from Tri-State, which had allegedly furnished defective equipment that rendered the barge unseaworthy. While the court found it necessary to remand the case for a determination whether Delta Marine was primarily or only secondarily negligent, the court concluded that "[I]t would be wrong to assess damages against a non-negligent or passively negligent shipowner for loss or injury suffered solely as the result of active negligence of another party, regardless of the absence of a contractual relationship between the parties." *Tri-State Oil Tool*, 410 F.2d at 186. Although the *Tri-State* case on account of its intermediate procedural posture did not specifically address whether attorneys' fees are properly included among the expenses recoverable by an indemnitee, courts have unhesitatingly held that attorneys' fees incurred in defending a suit are encompassed within the expenses for which maritime law permits indemnity. The courts, reasoning that indemnity in the admiralty context should embrace all reasonable and necessary expenses of defending, have found no basis for specially denegrating attorneys' fees. *Cotten v. Two "R" Drilling Co.*, 508 F.2d 669, 671 (5th Cir. 1975); *Kelloch v. S & H Subwater Salvage, Inc.*, 473 F.2d 767, 771 (5th Cir. 1973).

Although originally contending that any theory of active-passive negligence is an insufficient foundation for an award of attorneys' fees, and that such awards are proper only against a defendant who has expressly or impliedly *agreed* to pay attorneys' fees, or has been held *vicariously* liable, Phillips appears to have altered its position. At oral argument, Phillips conceded that a court has the authority to award attorneys' fees in admiralty against an actively negligent party on behalf of a passively negligent party, but maintained that the court here abused its discretion. Phil-

lips argues that a court must carefully parse the factual situation presented, and that the facts found by the district court here did not support an award of attorneys' fees. Thus, the issue tendered to us on appeal is narrowed to whether the trial court abused its discretion (not whether it was without legal authority) in ordering that the actively negligent tortfeasor, Phillips, indemnify the non-negligent or only passively negligent co-defendants, Commercial and Riverway, for reasonable attorneys' fees.

Notwithstanding the infelicity of analysis in terms of the labels "active" and "passive," we agree with the limited jurisprudential consensus that has now been reached that a court sitting in admiralty has the power to impose an attorneys' fee award. The logic underlying *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), in which the Supreme Court recently abrogated admiralty's moieties rule—requiring equal division of property damage—and held that "when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault," *id.* at 411, 95 S.Ct. at 1715, tends to support this position. As the Court in *Reliable Transfer* noted, "the judiciary has traditionally taken the lead in formulating flexible and fair remedies in the law maritime," and "Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law." 421 U.S. at 409, 95 S.Ct. at 1714, *quoting Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963).

Given the power to make such an award, we find that the occurrent situation is controlled by *Pasco Marketing, Inc. v. Taylor Towing, Inc.*, 554 F.2d 808 (8th Cir. 1977). That case focused on allocating liability for damage inflicted on Pasco's dock which was struck by two barges owned by Security but which had been moored by Taylor Towing. We held that Security remained liable with

respect to Pasco, because the law, without exonerating proof, presumes an absent owner to be in constructive custody of the barges. However, between Security, the owner, and Taylor Towing, the mooring vessel, the burden was on the mooring vessel to prove that it fulfilled its duty to tow and to secure adequately the barges. This Court concluded,

> Since it failed in this, we find that Security may hold Taylor Towing for indemnity. Security's fault, as the distant owner, is merely passive in comparison to the more active role of the tug. Under the circumstances, as between the two, the mooring vessel is the best party to assume the ultimate fault.

*Id.* at 812.

But for the possibly negligent mooring by Taylor, Security would not have been involved in the suit brought by Pasco. Similarly, but for the negligent discharge of the methanol by Phillips, Commercial, the distant barge owner, and Riverway, the interconnecting deliverer, would not have been called into court by DuPont to account for the destruction of its goods.

Phillips concedes that it is unable to distinguish the legal principles employed in *Pasco* from those applicable to the instant case. Nevertheless, it attempts to differentiate the situations on the facts. Phillips argues that when the acts and duties of multiple defendants are concurrent—when they arise at the same time and in the same place—then an award of attorneys' fees premised on an active/passive negligence theory is proper. In juxtaposition, Phillips asserts that when co-defendants perform temporally and spatially sequential acts, as occurred here, reliance on an active/passive negligence analysis is inappropriate. No case is cited in support of this proposition, and we do not believe it represents a logical development of the law.

In *Pasco*, the Court was justified in requiring Taylor Towing to indemnify Security precisely because Taylor Towing was deemed to have acted last. In fact, in admiralty cases, degrees of primary and secondary negligence or active as opposed to technical fault, will arise largely on account of the parties' successive positions in a chain of ownership-carriage-fleeting-[3] delivery and discharging responsibilities. Of similar import is *Magnum Marine v. Kenosha Auto Transport Co.*, 481 F.2d 933 (5th Cir. 1972). The principal question in *Magnum Marine* was which of two joint tortfeasors must ultimately bear the responsibility for damages caused when a pleasure boat belonging to Magnum Marine was harmed while being loaded by the stevedore, Eller, onto a ship owned by Sidarma. The facts found by the district court disclosed that despite objections by Eller's employees, Sidarma's chief mate insisted that the stevedores load the pleasure boat with the inadequate tackle he had assigned them. The court noted that "in these circumstances the stevedore had no other course of action open to it but to defer to the ship's choice of equipment and cannot now be charged with actively causing the ensuing accident." *Id.* at 935. The sequential relationship between Sidarma's insistence on the use of unseaworthy equipment after requests by the stevedore to employ other, available tackle is strikingly similar to Phillips' repeated requests for CHEM 42, in the face of inquiries by Riverway indicating a possible error, and to Phillips' order to unload the barge, despite notification by the dockman that the expected barge had not arrived. In both instances supervening acts—in one, by Sidarma and in the other by Phillips—rendered them guilty of active negligence.

Just as the court in *Magnum Marine* held the district court's findings not clearly erroneous, and required indemnification of the passive wrongdoer by the active one, our independent review of the record here persuades us that the trial court did not abuse its discretion in finding that the intervening negligence of Phillips was the sole cause of the destruction of the methanol. Therefore, Phillips' attempt to limit indemnification to situations involving simultaneous

---

**3.** Fleeting is a term used to describe the handling and delivery of barges in a local port area.

duties or in which one party had superior knowledge and control is misplaced.

Providing the trial court the discretion to impose on an affirmatively negligent party the obligation of indemnifying other parties from the necessary expenses incurred in defending the lawsuit may well have salutary consequences. The possibility of adverse attorneys' fees awards may encourage both assessments of the merits of one's position as well as early amicable resolution of this type controversy. When only a minimal difference in the parties' relative fault is evident on the record, the district court will not be expected to impose such a burden.

The judgment of the district court is affirmed.[4]

---

**4.** Because we affirm the order of the district court we need not reach the issues raised by

Commercial's cross-appeal.