704 F.2d 1038
 1986 A.M.C. 256
 KOCH FUELS, INC., Appellee,
v.
CARGO OF 13,000 BARRELS OF NO. 2 OIL, MORE OR LESS, IN REM,
and Inland Oil & Transport Co., Appellant.
KOCH INDUSTRIES, INC., Appellant,
Koch Fuels, Inc.,
v.
CARGO OF 13,000 BARRELS OF NO. 2 OIL, MORE OR LESS, IN REM,
and Inland Oil & Transport Co., Appellee.
 Nos. 82-1542, 82-1550.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1983.
Decided April 13, 1983.
 
 Shepherd, Sandberg & Phoenix, P.C., John S. Sandberg, St. Louis, Mo., for appellant Koch Industries, Inc. and Koch Fuels, Inc.
 Mark G. Arnold, Joseph P. Conran, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for appellee cross-appellant Inland Oil & Transport Co.
 Before BRIGHT, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 This appeal and cross-appeal arise out of a dispute between plaintiff-appellant Koch Industries, Inc., and intervenor, counter-claimant, and cross-appellant Inland Oil & Transport Co. (Inland) over an alleged agreement to charter a barge for transporting a shipment of oil. Koch Industries initiated an in rem action for possession of a cargo of oil, and, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure,[1] designated its claim as one within the district court's[2] admiralty jurisdiction. Inland intervened, filed a claim to the cargo, and filed a counterclaim against Koch Industries, seeking damages for breach of the charter agreement. On Inland's motion, the trial court severed Inland's in personam claims[3] and ordered them tried to a jury, which returned a verdict for Inland on its counterclaim in the amount of $35,000. Following the jury trial, the trial court considered the remaining claims under its admiralty jurisdiction, and held that the oil belonged to Koch Fuels, Inc., a subsidiary of Koch Industries which Koch Industries had joined as a party plaintiff. The court found Inland liable for conversion and entered judgment against Inland for $35,756.54.
 
 
 2
 On appeal, Koch Industries claims the trial court erred in severing Inland's counterclaim and granting Inland a jury trial thereon after Koch Industries had designated its claim as one in admiralty. Inland cross-appeals, claiming that the court erred in holding Inland liable for conversion and that the court wrongfully directed a verdict against Inland on its claim against Koch Industries for fraud. We affirm the judgment of the district court, 530 F.Supp. 1074.
 
 
 3
 I. Background.
 
 
 4
 Koch Industries, a Kansas corporation, is the sole owner of its subsidiary, Koch Fuels. Inland, a Missouri corporation, operates a barge line. On February 26, 1980, Roger Elliott, an officer of Koch Industries, contacted Jane Novak, an employee of Inland, about transporting a shipment of oil from Union Oil Company in LeMont, Illinois, to a Chicago terminal operated by Koch Fuels. Elliott and Novak tentatively agreed that Koch Industries would charter a barge for $800 per day, and that Novak would send a telex message setting forth the terms of the agreement. Novak mentioned that the telex would include some additional terms relating to insurance and indemnity.
 
 
 5
 Upon receiving the telex, Elliott and two other officers of Koch Industries found Inland's terms of warranty and indemnity unacceptable. They attempted to call Novak to propose terms they considered acceptable, but Novak had left work for the day. According to the terms of Inland's telex, Koch Industries was to acknowledge acceptance of the charter by return telex. Koch Industries did not send an acknowledgement.
 
 
 6
 Apparently, however, Elliott did not foresee any insurmountable problems in arriving at an acceptable agreement. Earlier that afternoon, before Koch Industries had received Inland's telex, officials of both companies contacted the Union Oil refinery. Officials at the three companies made preparatory arrangements for dock space at Union Oil to load the barge with oil, and Inland retrieved one of its barges from a shipyard where the barge had been docked for repairs. Although Koch Industries objected to the language contained in Inland's telex, Elliott testified at trial that upon receiving the telex, he made no attempt to halt the arrangements made previously that afternoon.
 
 
 7
 On the morning of the next day, February 27, Union Oil personnel began pumping oil onto the barge. Sometime that morning, however, Union Oil personnel discovered a pinhole leak in one of the compartments of the barge. Union Oil contacted both Novak and Elliott, and both agreed that the oil would have to be pumped back to Union Oil's refinery, and the barge returned to its shipyard to repair the leak. While pumping the oil off the barge, the pump broke down, and the barge, still laden with its cargo, had to be returned to its shipyard for repairs to the pump. The pump remained broken for two days, until February 29. Sometime on February 27, Union Oil officials measured the amount of oil on the barge at 554,171 gallons. The district court could not determine from the evidence, however, whether the Union Oil officials measured the oil before or after they began pumping it back to the refinery.[4] Koch Industries paid Union Oil for 554,171 gallons of oil.
 
 
 8
 Before the barge could be returned to the Union Oil docks to resume pumping off the oil, relations between Koch Industries and Inland broke down. Koch Industries notified Inland that it no longer wished to ship the oil. Inland maintained that, under its purported telex agreement with Koch Industries, Koch Industries had assumed responsibility for charter hire, barge repair, and all other liability incurred in connection with the barge since February 26. Furthermore, Inland stated that it considered the barge redelivered to Inland by Koch Industries and the cargo abandoned. Inland refused to discharge the oil unless Koch Industries agreed to indemnify Inland and put up $60,000 as security for the losses Inland incurred in securing and repairing the barge. Inland also refused to allow Koch Industries' surveyor to measure the oil on the barge. On March 4 or 5, Inland had the barge towed to St. Louis, stored the oil, and notified Koch Industries that it intended to store the oil at Koch Industries' expense until the parties "resolved" the issues.
 
 
 9
 Koch Industries maintained that it had never accepted Inland's initial offer of charter, denied liability for any expenses, and demanded that Inland return the oil. On March 13, 1980, Koch Industries initiated its in rem action seeking a declaration of ownership and possession of the cargo. Inland intervened as defendant, filed its answer and claim to the cargo, and filed its counterclaim against Koch Industries. Koch Industries, in turn, amended its in rem complaint to allege in personam claims of conversion directly against Inland. Pursuant to Rule 9(h), Koch Industries designated its entire claim as one in admiralty.[5] After requiring Koch Industries to post bond, the court ordered the oil delivered to Koch Industries. Thereafter, Inland delivered 512,719 gallons of oil to Koch Industries.
 
 
 10
 On Koch Industries' motion, the court allowed Koch Industries to amend its complaint and add Koch Fuels, its subsidiary, as a party plaintiff. Prior to trial, the court granted summary judgment against Koch Industries on its claim to the oil. Basing its holding on deposition testimony, the court concluded that Koch Industries had never owned the oil. In addition, the court ruled that Inland's counterclaim presented common law claims entitling Inland to a jury trial, and granted Inland a separate trial on its counterclaim.
 
 
 11
 Following the jury trial, in which the jury awarded Inland $35,000 on its counterclaim against Koch Industries, the court tried the issue of ownership of the cargo and held that: (1) Koch Fuels owned the oil; (2) Koch Industries had acted as agent for Koch Fuels; (3) Inland wrongfully converted the oil on February 29 (when Inland did not return the barge to Union Oil's docks after the barge pump was repaired); and (4) Koch Industries was entitled to the fair market value of the difference between the amount of oil for which Koch Industries paid Union Oil and the amount Inland returned to Koch Industries. The court entered judgment against Inland of $35,756.54, plus prejudgment interest.
 
 
 12
 II. Discussion.
 
 
 13
 A. Inland's Right to a Jury Trial.
 
 
 14
 Koch Industries contends that the trial court abused its discretion in granting Inland a jury trial on Inland's counterclaim. Koch Industries argues that because the two claims arose out of the same sequence of events, and Koch Industries had elected under Rule 9(h) to proceed within the admiralty jurisdiction of the court, the Rule 9(h) election entitled Koch Industries to a bench trial of the entire suit.
 
 
 15
 The seventh amendment does not require jury trials in cases based on claims in admiralty. Fitzgerald v. United States Lines, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). Ordinarily, admiralty claims are tried to the court. An admiralty claim that is also cognizable as a civil claim, however, may be brought as an ordinary civil action. In these cases, the right to trial by jury attaches. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 359-60, 82 S.Ct. 780, 783-784, 7 L.Ed.2d 798 (1962).
 
 
 16
 Under Rule 9(h), a plaintiff whose claim could be brought in federal court either in admiralty or under some alternative cause of action may designate the claim as one in admiralty. Generally, such an election precludes a jury trial. As the Advisory Committee Note to Rule 9(h) explains:
 
 
 17
 One of the important procedural consequences [of a Rule 9(h) election] is that in the civil action either party may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute. [Fed.R.Civ.P. 9(h) advisory committee note.]
 
 
 18
 Although there is no constitutional right to a jury trial in an admiralty case, neither is there a prohibition against jury trials in admiralty cases. Neither the seventh amendment, nor any statute or rule of procedure forbids jury trials. Congress has largely left to the courts' discretion "the responsibility for fashioning the controlling rules of admiralty law." Fitzgerald v. United States Lines, supra, 374 U.S. at 20, 83 S.Ct. at 1650.
 
 
 19
 Rule 42(b) of the Federal Rules of Civil Procedure empowers the district court in exercising its discretion, to order separate trials in a number of instances. The rule provides:
 
 
 20
 (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. [Fed.R.Civ.P. 42(b).]
 
 
 21
 In exercising its discretion, a trial court must, whenever possible, strive to preserve the right to a trial by jury. Beacon Theatres, Inc. v. Westover, U.S. District Judge, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959). In addition, a court should consider the interests of judicial economy and of avoiding confusion. In Fitzgerald v. United States Lines, supra, 374 U.S. at 17, 83 S.Ct. at 1648, a plaintiff brought one claim entitling him to a jury trial together with several other traditional admiralty claims. The Supreme Court ordered the plaintiff's entire case tried to a jury rather than allowing his case to be split between factfinders simply because one of his claims invoked a right to trial by jury. Id. at 22, 83 S.Ct. at 1651. The Court rejected the notion that economy and clarity should be sacrificed in the name of tradition, stating:
 
 
 22
 Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments. Id. at 21, 83 S.Ct. at 1650.
 
 
 23
 By consolidating the plaintiff's claims in Fitzgerald, the Court achieved each of the ends of economy, clarity, and preserving the right to a jury trial. In addition, the Court evinced its willingness to try traditionally nonjury admiralty claims to a jury when necessary.
 
 
 24
 The instant case, however, differs from Fitzgerald in that this case involves more than "essentially one lawsuit to settle one claim." Koch Industries claims that whether or not a charter agreement existed, Inland wrongfully converted cargo belonging to Koch Fuels. Inland's counterclaim, on the other hand, seeks damages for breach of contract from Koch Industries. Moreover, the two claimants assert with equal adamancy their respective rights to conflicting factfinders. By severing the claims, the trial court preserved both Koch Industries' right under Rule 9(h) to have its claim tried to the court, and Inland's right to have its claim tried to a jury. The court, therefore, exercised its discretion in a manner consistent with the policy of Beacon Theatres, and preserved Inland's right to a jury trial. Where, as here, both parties, using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results, a trial judge may separate the claims in the interests of preserving constitutional rights, clarity, or judicial economy. Fed.R.Civ.P. 42(b). Accordingly, we affirm the district court's grant of a jury trial.
 
 
 25
 B. Finding of Conversion.
 
 
 26
 Inland cross-appeals, asserting the trial court erred in granting judgment in favor of Koch Fuels on its claim of conversion. Inland argues that Koch Fuels cannot recover because it failed to prove the amount of cargo on board the barge at the time of the conversion, and, therefore, failed to prove its damages to a reasonable degree of certainty.
 
 
 27
 The only evidence of the amount of oil on board the barge at the time of Inland's conversion was the measurement of 554,171 gallons taken by the Union Oil dock workers. When Inland returned the cargo, only 512,719 gallons were aboard, a difference of 41,452 gallons. The trial court found insufficient evidence to determine whether the Union Oil dock workers had measured the amount of oil before or after they began pumping the oil off the barge. Notwithstanding this uncertainty, the trial court, employing principles of estoppel, relied upon the Union Oil measurement for the purpose of figuring damages. The court held that because Inland took possession of the oil and refused to allow Koch Industries to measure it, Koch Industries was forced to pay Union Oil for the amount shown by the Union Oil measurement. Consequently, the court held Inland estopped from contesting the accuracy of the Union Oil measurement.
 
 
 28
 Inland does not dispute that it refused Koch Industries access to the oil. Rather, Inland argues that by applying principles of estoppel and accepting the possibly inaccurate Union Oil measurement, the district court not only restored Koch Industries to its rightful position, but afforded it a positive gain. Inland proffers its own measurement, taken on the day of conversion and without Koch Industries present, as proof that Inland returned all of the cargo intact. In essence, Inland argues that it should not be estopped from disputing the Union Oil measurement where some uncertainty exists as to the measurement's accuracy. Inland ignores, however, that Koch Industries paid Union Oil for 41,452 more gallons of oil than Inland returned after the conversion. Regardless of the reliability of the Union Oil measurement, Koch Fuels suffered a loss upon return of the oil, and the district court traced the loss directly to Inland's wrongful actions. Consequently, in the circumstances here, the trial court did not err in accepting the Union Oil measurement as a proper measure of damages.
 
 
 29
 Inland next contends that Koch failed to prove the elements of conversion under Illinois law[6] because Koch Fuels did not establish that it had made a demand for possession. Moreover, Inland argues, Koch Industries could not act as Koch Fuels' agent in demanding the oil because Koch Industries did not communicate to Inland its authority to act as Koch Fuels' agent.
 
 
 30
 Koch Fuels counters that Illinois law requires a demand for possession only when the party converting the property obtained initial possession rightfully, citing Jensen v. Chicago and Western Indiana Railroad Company, 94 Ill.App.3d 915, 50 Ill.Dec. 470, 419 N.E.2d 578 (Ill.App.1981). Regardless of whether Illinois law would require a demand for possession in this instance, we agree with the district court's finding that Koch Industries, acting on behalf of Koch Fuels, made sufficient demand for possession of the oil. Furthermore, we agree that sufficient evidence exists in the record to show that Inland understood Koch Industries' authority to act on behalf of Koch Fuels.
 
 
 31
 We also reject Inland's argument that the district court lacked jurisdiction to enter a judgment in favor of Koch Fuels because Koch Fuels did not file a verified pleading separate from Koch Industries'. After allowing Koch Industries to amend its complaint and add Koch Fuels as a party plaintiff, the district court construed Koch Industries' amended complaint as if it had been amended by interlineation. The court then entered summary judgment against Koch Industries on the claim to ownership of the cargo, leaving Koch Fuels as the sole plaintiff claiming ownership of the oil. After reviewing the record, we are convinced that the parties proceeded as if the requisite substitution had been made in the complaint. No confusion or prejudice to Inland resulted.
 
 
 32
 Finally, we reject Inland's argument that the district court erred in directing a verdict against Inland on the allegations in its counterclaim against Koch Industries based on fraud. Inland claimed that Koch Industries committed fraud by misrepresenting its intent to accept and comply with the charter agreement. The record shows no more than that Koch Industries rejected Inland's charter proposal and negotiated for more favorable terms. Accordingly, we reject Inland's appeal on this issue.
 
 
 33
 III. Conclusion.
 
 
 34
 In sum, we affirm the judgment enforcing the jury verdict in favor of Inland on Inland's claim against Koch Industries for breach of contract. In addition, we affirm the district court's judgment in favor of Koch Fuels on its claim for ownership of the cargo and against Inland for conversion.
 
 
 
 [1]
 For text of Rule 9(h), see footnote 5, infra
 
 
 [2]
 The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri
 
 
 [3]
 Inland sought damages for breach of the charter agreement, trespass to chattels, negligence, and for recovery of storage fees
 
 
 [4]
 A factor that possibly contributed to the confusion was that the normal Union Oil dock crew had gone on strike, and inexperienced Union Oil supervisors performed the dock work
 
 
 [5]
 Federal Rule of Civil Procedure 9(h) provides in pertinent part:
 (h) Admiralty and Maritime Claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim * * *. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.
 
 
 [6]
 In deciding the conversion claim, the district court applied the law of Illinois, the state in which the alleged conversion occurred, after determining that application of the state law would not interfere with the uniformity or characteristic features of admiralty and maritime law. See Just v. Chambers, 312 U.S. 383, 389, 61 S.Ct. 687, 692, 85 L.Ed. 903 (1941)