# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2502

_____

|  |  |  |
|---|---|---|
| American River Transportation Company, Inc., | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Paragon Marine Services, Inc.; | * | |
| Consolidated Grain and Barge Company, | * | |
| | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: February 13, 2003

Filed: June 2, 2003

_____

Before LOKEN[1], Chief Judge, RILEY and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

American River Transportation Company, Inc. (ARTCO) instituted the present action against Paragon Marine Services, Inc. (Paragon) and Consolidated Grain and Barge Co. (CGB) (collectively appellants) after a barge, the ING 5565, broke away

_____

[1]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

from a fleet of barges operated by Paragon and CGB. The ING 5565 drifted downstream and collided with other barge fleets, loosening 137 barges as it traveled down river. After a bench trial, the district court[2] awarded ARTCO $1,544,713 in damages plus prejudgment interest. Appellants argue the district court erred in finding Paragon failed to overcome the presumption of negligence, and that Paragon was liable under the doctrine of *res ipsa loquitur* and as a bailee. Because the district court did not clearly err in determining the barge broke free due to negligence rather than sabotage, we affirm.

The district court heard the parties' dispute under its admiralty jurisdiction. See 28 U.S.C. § 1333(1) (2000); Fed. R. Civ. P. 9(h) & 38(e); Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil, 704 F.2d 1038, 1041 (8th Cir. 1983). After empaneling an advisory jury,[3] the district court entered judgment in ARTCO's favor, finding the appellants' negligence caused the ING 5565 to breakaway and collide with other fleets. Appellants argued at trial the ING 5565 became loose due to an unforeseeable criminal act of sabotage. In an admiralty case, even with an advisory jury, we review the district court's findings of fact for clear error. See Fed. R. Civ. P. 52(a); McAllister v. United States, 348 U.S. 19, 20 (1954).

When a collision is caused by a vessel drifting from her moorings, the moving vessel is presumed to be at fault unless affirmative proof shows an "inevitable accident, or a *vis major*, which human skill and precaution . . . could not have prevented." The Louisiana, 70 U.S. (3 Wall.) 164, 173 (1865); see Pasco Mktg, Inc. v. Taylor Towing Serv., Inc., 554 F.2d 808, 810 (8th Cir. 1977). The fleet operator, or mooring vessel, is legally responsible for insuring proper mooring. See Pasco, 554

---

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[3]The advisory jury found the facts in appellants' favor.

F.2d at 811. Therefore, the fleet operator, Paragon and CGB, had the burden of proving exoneration from liability. See id.

The undisputed facts presented during the trial were that on April 23, 1998, the ING 5565 was delivered to appellants, whose tug placed the ING 5565 into the Valley Main fleet of barges. On April 24, two of appellants' tugs shifted several barges including the ING 5565. The ING 5565 was then moored at the upstream end of the Valley Main fleet and was the outside barge, about 140 feet from the riverbank. Appellants' crew did not check the moorings between the ING 5565 and the attached barge after the shifting. About three hours later, the ING 5565 separated from its moorings and drifted down river, unattended, in a swift current. The ING 5565, weighing approximately 1700 tons, collided with an ARTCO barge secured to an ARTCO fleet, starting a chain reaction ultimately loosening 137 barges, including 102 barges moored in ARTCO's fleet. Fifteen tugboats, including ARTCO tugboats, responded to the breakaway, intercepting runaway barges and protecting moored vessels.

The district court also found appellants' fleet management was lax due to their failure to maintain a formal safety program or written procedures for mooring and inspecting barges, and there was no requirement for tie-offs in appellants' fleets to be inspected after shifting. The district court found incredible appellants' sabotage theory. We find no clear error in the district court's finding that sound management of the Valley Main fleet could have prevented the ING 5565 from breaking away. Accordingly, under the standard set forth in The Louisiana, appellants failed to rebut the presumption their negligence caused the breakaway.

Because appellants failed to overcome the presumption of negligence, we affirm. Based on our resolution of the negligence issue we need not address appellants' claims regarding the doctrine of *res ipsa loquitur* or Paragon's liability as a bailee. Finally, appellants waived their argument regarding prejudgment interest,

because they raised it for the first time in their reply brief.  See Viking Supply v. Nat'l Cart Co., 310 F.3d 1092, 1099 (8th Cir. 2002).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.