646 F.Supp. 796 (1986)
MANUFACTURERS RAILWAYS COMPANY, a corporation, Plaintiff,
v.
RIVERWAY HARBOR SERVICE ST. LOUIS, INC., a corporation, Defendant.
No. 86-781A(B).
United States District Court, E.D. Missouri, E.D.
October 7, 1986.
Nick Lamb, Thompson & Mitchell, St. Louis, Mo., for plaintiff.
Robert Nienhaus, Goldstein & Price, St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This is an admiralty action before the Court for final judgment after trial before the Court without a jury. Plaintiff, Manufacturers Railway Company (MRC) seeks to recover damages from defendant, Riverway Harbor Service St. Louis, Inc. (Riverway), for an incident that occurred on April 27, 1985. MRC claims that Riverway's vessel the M/V TRIPPER and/or its tow destroyed two wooden piling clusters while positioning a molasses barge for off-loading at MRC's dock facility. MRC seeks to recover the replacement cost of the piling clusters.
Riverway denies that the M/V TRIPPER or its tow collided with, damaged, or destroyed the piling clusters. Riverway claims that the M/V TRIPPER was making a routine and customary maneuver at the time the piling clusters fell over due to pre-existing damage. Riverway claims that the piling clusters were unfit for the purpose for which they were intended and MRC is not entitled to recover for their value.
This Court has jurisdiction of the subject matter of this case pursuant to 28 U.S.C. Section 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.
At all material times, MRC was a corporation duly organized and existing under *797 law and owner and operator of a certain dock facility located on the Mississippi River at or near Mile 176 in St. Louis, Missouri.
At all material times, Riverway was a corporation organized and existing pursuant to law and the owner and operator of the M/V TRIPPER, a river tow boat.
On April 27, 1985, prior to the incident at issue in this case, plaintiff's dock facility was comprised of a work barge used for the mooring of molasses barges, cables and wires to secure the work barge to the bank, a steel walkway and dock between the shore to the work barge, and certain wooden piling clusters used to stablize the work barge.
In the incident on April 27, 1985, two of the wooden piling clusters fell over. These pilings were located adjacent to each other, shoreward and on the upriver end of the work barge.
The northernmost of the two damaged clusters was originally constructed in or near 1954 and reinforced by four individual wooden pilings in 1978 (hereinafter "1978 piling cluster"). This reinforcement cost $8,370.00.
The other cluster which fell over in this incident was immediately downriver from but adjacent to this northernmost cluster (hereinafter "1983 piling cluster"). It was installed new in December, 1983, at a cost of $35,360, and consisted of thirteen individual timbers which were eighty-five feet in length and driven into the river bed. The useful life of each of the destroyed piling clusters at the time of their construction was 20 years.
On April 27, 1985, at or about 8:30 p.m., the M/V TRIPPER arrived at MRC's dock with Barge T-7952 and Barge CCT-77 in tow. Its purpose was to position Barge T-7952 for off-loading its cargo of molasses. Barge CCT-77, a rake barge, was in tow as a "bow piece" for Barge T-7952, which was a box barge. Captain Guy Rhoades was in command of the M/V TRIPPER. He holds a First Class Western Rivers Operator license which qualifies him to operate vessels on any western river, including the entire Mississippi River. He has approximately 10 years river experience and had previous experience in mooring barges at MRC's dock. He was familiar with all the conditions that prevailed at the MRC dock facility. The river stage on April 27, 1985 was 18.3 feet on the St. Louis guage, and the current was swift near the dock.
Although the M/V TRIPPER and its tow arrived at the MRC dock at 8:30 p.m., the TRIPPER's crew could not secure Barge T-7952 until about 40 minutes later, because the upriver mooring wire had become entangled in trees and drift in the river. After the wire was retrieved, the crew of the TRIPPER was able to begin to position T-7952 for unloading.
Sometime later, Tom Murdock, terminal manager of MRC, appeared on the scene and discovered a 5 to 10 foot gap between the dock and the downstream end of the dock barge. Murdock requested the TRIPPER crew to close the gap. At this time, Barge T-7952 was tied to the outriver side of the dock barge. Barge CCT-77 was tied alongside of Barge T-7952. The TRIPPER was faced up to the upriver end of Barge CCT-77.
At this point, the respective parties' evidence diverged considerably as to the actions taken by the TRIPPER. Mr. Murdock, for MRC, testified that the TRIPPER used the pile clusters as a pivot point and pushed downstream on the CCT-77, in an apparent effort to close the gap at the downstream end of the dock barge. Mr. Murdock claimed that during this effort, the 1978 and 1983 piling clusters collapsed toward the bank. By contrast, the TRIPPER crewmembers testified that in preparing to close the gap, the TRIPPER and Barge CCT-77 first backed up and away from Barge T-7952 at which time the piling clusters fell over without additional pressure from the TRIPPER or its tow.
The Court finds it is unnecessary to resolve the conflict in this testimony. Even if the TRIPPER was doing what Mr. Murdock claims, this would not render Riverway *798 liable for the piling cluster damage. Using a piling cluster as a pivot point is a normal and foreseeable maneuver at a dock, and one which a fit piling cluster would and should withstand. This was confirmed by credible expert testimony. The 900 Horsepower TRIPPER could not have exerted enough force on the piling clusters to cause them to collapse if they were in good condition and reasonably fit to withstand normal and foreseeable navigation maneuvers. The only reasonable finding and conclusion is that the piling clusters had sustained previous deterioration and damage that made them unable to withstand normal handling.
In support of the Court's finding that the piling clusters were previously damaged, Mr. Murdock admitted that neither maintenance nor inspections had been performed on the 1983 piling cluster either above or below the river surface since its installation more than a year earlier or since an incident involving the M/V ATHENA which caused damage to the MRC docking facility on or about May 27, 1984.
There is no evidence that the M/V TRIPPER negligently collided with or damaged MRC's piling clusters on April 27, 1985.
MRC argues that when a vessel collides with a stationary object, the vessel is presumed to be at fault. However, this is not an appropriate case for application of the presumption. Mississippi River Grain Elevator, Inc. v. M/V NIA ALBERTO, 1983 AMC 1133, 1135-36 (E.D.La.1982). The cases cited by the plaintiff to support their argument that the M/V TRIPPER should be presumed at fault[1] all involved vessels which drifted into or negligently collided with a stationary object. In the instant case, the evidence is that the only contact between the M/V TRIPPER and its tow and the MRC docking facility occurred during normal docking procedures. The piling clusters should have been able to withstand the handling of a vessel during normal docking procedures. NIA ALBERTO at 1135-36. Further, the evidence is clear that even if the M/V TRIPPER was pivoting off the piling clusters, this was a customary and routine navigational maneuver; it is ordinary, customary and expected for vessels to exert some force upon the fender barge and piling clusters while positioning barges at the dock. Since the clusters are designed for the purpose of absorbing the impact of docking, the application of the presumption of fault doctrine under these circumstances would not be correct. Phillips Petroleum Co. v. Trinidad Corp., 1979 AMC 1352, 1357 (M.D.Fla. 1978).
Thus, MRC, as plaintiff, bears the burden of proving that negligence on the part of Riverway resulted in destruction of the piling clusters. MidAmerica Transportation Co. v. Gladders Towing Co., 492 F.Supp. 475, 477 (E.D.Mo.1980). The mere fact that the piling clusters fell over while the M/V TRIPPER was at or near the dock does not create any inference of negligence or that it was due to the actions of the TRIPPER. Schwerman Trucking Co. v. Gartland Steamship Co., 496 F.2d 466, 476 (7th Cir.1974). Negligence may not be presumed merely from proof that damage occurred. United States Rubber Co. v. Bauer, 319 F.2d 463, 465 (8th Cir.1963). The Court concludes that on the evidence presented, MRC has failed to sustain its burden of proving by a preponderance of the evidence that negligence on the part of Riverway caused MRC's piling clusters to fall over.
The foregoing memorandum opinion constitutes our findings of fact and conclusions of law. Judgment will be entered for defendant.

JUDGMENT
The Court having this day entered its Memorandum Opinion and Order,
*799 NOW, THEREFORE, in accordance therewith IT IS HEREBY ORDERED and ADJUDGED that plaintiff take nothing and that this action be and the same is HEREBY DISMISSED WITH PREJUDICE.
NOTES
[1] The Oregon, 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1895); Freeport Sulphur Co. v. THE S/S HERMOSA, 526 F.2d 300, 302 n. 1 (5th Cir.1976); Patterson Oil Terminals v. The Port Covington, 109 F.Supp. 953, 954 (E.D.Pa. 1952); Monsanto Company v. Port of St. Louis Investments, Inc., 350 F.Supp. 502 (E.D.Mo. 1972).