AMERICAN PETROFINA PIPELINE COMPANY, Plaintiff-Appellant,

v.

M/V SHOKO MARU, Her Engines, Tackle, etc., and the Sanko Steamship Co., Ltd. (Sanko Kisen K.K.) Her Owners and/or Charterers, and/or Operators, Defendant-Appellee.

No. 87–2303.

United States Court of Appeals, Fifth Circuit.

Feb. 22, 1988.
Rehearing Denied March 24, 1988.

Thomas O. Deen, Brown, Sims, Wise & White, Houston, Tex., for plaintiff-appellant.

Leslie Denis Cassidy, III, Kleberg, Dyer, Redford & Weil, Corpus Christi, Tex., for defendant-appellee.

Before BROWN, JOHNSON and HIGGINBOTHAM, Circuit Judges

JOHNSON, Circuit Judge:

American Petrofina Pipeline Co. appeals an adverse judgment in a suit for damage to a dock allegedly caused by the ship M/V Shoko Maru. Because we do not believe that the district court clearly erred in finding that the Shoko Maru was not at fault, we affirm.

## I. BACKGROUND

The M/V Shoko Maru is an oil tanker owned by the Sanko Steamship Co., Ltd. (Sanko Kisen K.K.). On September 1, 1983, the Shoko Maru, commanded by Captain Naritu and handled by a Corpus Christi harbor pilot, approached a dock owned by the American Petrofina Pipeline Co. in Harbor Island, Texas. Because the ship was not correctly aligned for discharging oil, the harbor pilot ordered the vessel moved forward along the face of the dock. In the course of this maneuver, Petrofina's dock fenders 4a and 6y were damaged.

Petrofina sued the Shoko Maru for $62,-313.98 in repairs. Trial was held to the district court. The principal witnesses were Kenneth Lambertson, a surveyor hired by the shipowner, and Captain Robert Jung, an employee of Exxon Corp., the ship

charterer, who observed the incident. The Shoko Maru did not call the harbor pilot, the captain, or any members of the ship's crew. The district court gave a judgment for the Shoko Maru, and Petrofina appeals.

## II. DISCUSSION

■ Under general maritime law and the law of this Court, there is a long-standing presumption that, when a moving ship collides with a stationary object, the moving ship is at fault. *The Oregon,* 158 U.S. 186, 192–93, 15 S.Ct. 804, 807, 39 L.Ed. 943 (1895); *Delta Transload, Inc. v. M/V Navios Commander,* 818 F.2d 445, 449 (5th Cir.1987); *United States v. T/B Arcadian,* 714 F.2d 470, 474 (5th Cir.1983). This presumption operates to shift the burden of proof—both the burden of producing evidence and the burden of persuasion—onto the moving ship. *Delta Transload,* 818 F.2d at 449; *James v. River Parishes Co., Inc.,* 686 F.2d 1129, 1131–33 (5th Cir.1982). The moving ship may rebut the presumption by showing, with a preponderance of the evidence, that the collision was the fault of the stationary object, that the moving ship acted with reasonable care, or that the collision was an unavoidable accident. *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790, 795 (5th Cir.1977), *cert. denied* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 518 (1978); *see also, Delta Transload,* 818 F.2d at 449; *James,* 686 F.2d at 1132; *Woods v. United States, Dept. of Transportation,* 681 F.2d 988, 990 (5th Cir.1982). Ultimately, the presumption derives from the common-sense observation that moving vessels do not usually collide with stationary objects unless the vessel is mishandled in some way. *Delta Transload,* 818 F.2d at 449; *Bunge,* 558 F.2d at 795.

■ Remarks of the district court indicate that the court may have believed the presumption to be inapplicable in cases where damage occurs to parts of wharves designed to come into contact with ships or where witnesses observe the accident. If the district court did so hold, the court erred. We have found no case in which the initial application of the presumption depended on the absence of witnesses. Some

district courts in this Circuit and elsewhere have absolved ships from liability for damage to parts of wharves, like the fenders of the instant case, designed to absorb impact during normal docking. A careful reading of these cases reveals that the courts either found that the presumption did not apply or that the wharf was so defective as to rebut the presumption. *See, e.g., Manufacturers Railways Co. v. Riverway Harbor Service,* 646 F.Supp. 796 (E.D.Mo.1986) (no collision involved in normal docking; presumption does not apply); *Mississippi Grain Elevator, Inc. v. M/V Nai Alberto,* 1983 A.M.C. 1133, 1135–36 (E.D.La.1982) (presumption does not apply where vessel makes only "normal impact" on wharf parts designed to absorb such impact); *Phillips Petroleum Co. v. Trinidad Corp.,* 1979 A.M.C. 1352, 1358 (M.D. Fla. 1978) (proportional fault used to reduce damages payable by vessel that struck improperly maintained breasting dolphins; vessel liable only for damages to extent that impact was greater than normal). These cases do not counsel an exception to the presumption when damage occurs to stationary objects designed to come into contact with vessels; rather, they make the obvious observation that contact must rise above a certain minimal level before it constitutes a collision at all, thus activating the presumption.

■ The district court's judgment for the ship in the instant case can be upheld either on the theory that no collision occurred or on the theory that the ship rebutted the presumption by showing defects in the fenders and reasonable handling of the ship. We review the district court's finding of these facts under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *James,* 686 F.2d at 1131. The district court chose to give great weight to the testimony of Captain Robert Jung, an employee of the charterer, Exxon Corp. Jung, who had forty years' experience as a licensed master, stated that the mooring was conducted in a normal and competent manner. Jung also reported that the Fender 4a face piece was already loose before the docking, and simply fell off.

The ship presented reports and testimony from Kenneth Lambertson, a marine surveyor hired by the ship to examine the wharf on the night of the accident. Lambertson observed old damage to Fender 4a, missing bolts from neighboring fenders, and evidence of general disrepair on the fenders. A few weeks later, Lambertson revisited the dock and noticed that the face piece had been rehung but that it was bolted at the top only. The district court evidently inferred that the Fender 4a face piece may have been inadequately bolted on the day of the accident as well. Lambertson observed that the rubber "Raykin units" behind the Fender 4a face pieces showed only minor damage. Lambertson gave his opinion that, if collision with the ship had torn off the fender face pieces, the Raykin units would have been broken or twisted. The district court also considered the fact that a fender between the two damaged fenders sustained no damage. Since the ship had apparently made the same lateral movement across all three fenders, the court inferred that some condition peculiar to the two damaged fenders caused them to come loose. The district court concluded that this condition could have been the loose or missing bolts and general disrepair observed by Lambertson. Finally, Lambertson and Jung both testified that the sides of the Shoko Maru showed none of the damage to be expected from a collision with the dock.

Petrofina argues, however, that the district court should have inferred from the ship's failure to produce testimony by the pilot, captain, or crew members, that these witnesses would have shown negligence by the ship. We see no reason why the district court should have drawn such an inference. Captain Jung described the docking maneuvers, and his testimony was consistent with the physical evidence. The district court was not faced with a complete absence of evidence on the ship's movements; instead, the court had an experienced witness whom the court chose to believe. The Shoko Maru's failure to produce the captain and crew members is understandable in view of the relatively small amount of money at stake in the case and the expense of retrieving these witnesses from abroad. Under these circumstances, the district court did not err in refusing to ascribe significance to the ship's failure to produce the witnesses.

In short, the district court concluded that the damage to Fenders 4a and 6y was not caused by fault of the Shoko Maru. This finding is supported by evidence and is not clearly erroneous. Judgment for the ship is therefore

AFFIRMED.