United States Court of Appeals,

Fifth Circuit.

No. 92-3915.

Vernon BRUNET, Plaintiff,

v.

UNITED GAS PIPELINE CO., Defendant-Appellee,

v.

BOWMECH MARINE, INC., Defendant-Appellant.

In the Matter of BOWMECH MARINE, INC., for Exoneration from or Limitation of Liability, Petitioner-Appellant, Cross-Appellee,

v.

UNITED GAS PIPELINE CO., Am. Commercial Barge Line, and National Marine, Inc., Claimants-Appellees, Cross-Appellants.

March 7, 1994.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before DUHÉ, EMILIO M. GARZA, Circuit Judges and STAGG,[1] District Judge.

DUHÉ, Circuit Judge:

Bowmech Marine Company, Inc. ("Bowmech") appeals the district court's denial of its petition for exoneration from or limitation of liability for the damages sustained when barges in tow by its vessel came in contact with a pipeline owned by United Gas Pipe Line Company ("United Gas"). Bowmech also seeks review of the damages awarded to United Gas.

BACKGROUND

On January 18, 1991, the KAREN ELIZABETH, a pushboat owned and operated by Bowmech, was assigned to deliver four empty barges from the Mississippi River near New Orleans to Weeks Island Salt Mine, via the Gulf Intracoastal Waterway ("GIW"). Two of the barges were owned by American Commercial Barge Line Company ("ACBL"), and the other two were owned by National Marine, Inc. ("National"). The KAREN ELIZABETH was manned by a crew of four:

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

Irvin Gremillion, captain; Vernon Brunet, pilot; and Ricky Kramer and Eugene Cheramie, deckhands.

Due to weather forecast for heavy winds, Gremillion determined that the safest way to proceed was to push the empty barges in a two-by-two configuration, which reduces the effects of the wind on the tow and minimizes the risk of becoming windbound.[2] A Coast Guard permit was obtained to allow the vessel to sail with the special configuration.

The voyage began about 2:00 a.m. on January 18, 1991. At about 2:00 p.m., with Brunet at the wheel, the KAREN ELIZABETH approached a bend in the GIW near Mile 51. As Brunet maneuvered the bend, the tow became windbound. The wind pushed the tug and barges to the south bank of the GIW. The barges landed on rocks that had been placed on the south bank to protect a United Gas pipeline, which ran underneath the GIW. Shortly after the barges came into contact with the rocks, the pipeline exploded. The KAREN ELIZABETH and the four barges were damaged.

Bowmech filed a petition for exoneration from or limitation of liability arising out of the allision.[3] United Gas, National, ACBL, Gremillion, and Brunet filed answers and claims in the limitation action. The liability and damage issues were tried separately. At the conclusion of the bench trial on the liability issues, the district court determined that Bowmech was solely at fault for the casualty and had knowledge of the negligence causing the casualty. Accordingly, the court denied Bowmech's petition for exoneration from or limitation of liability. After a bench trial on damages, the district court ordered Bowmech to pay damages to United Gas, ACBL, and National.

Bowmech appeals the district court's orders denying its petition for exoneration from or limitation of liability, denying its motion *in limine* to exclude evidence regarding its crew's drug use,

---

[2]Windbound is a situation when the pilot can no longer control the tow because the wind forces against it are stronger than the engines of the boat.

[3]Two of the crew members, Brunet and Gremillion, claimed injuries from the allision. Brunet filed a personal injury claim against Bowmech and United Gas in federal court. This suit was consolidated with Bowmech's action and then settled prior to trial. Gremillion filed a personal injury claim against Bowmech in state court. Additionally, Gremillion filed a counterclaim, mirroring his state action, in Bowmech's limitation action. The district court severed Gremillion's counterclaim and stayed Gremillion's state action until the issue of Bowmech's liability was resolved. It then dismissed his counterclaim as moot and lifted the stay of his state court proceeding.

and awarding damages to United Gas. United Gas, National, and ACBL filed cross-appeals to be addressed in the event that we disturb the district court's decision.

DISCUSSION

I. Findings of Fault

A. Standard of Review

In maritime actions, questions of fault are "factual issues which cannot be disturbed on appeal unless the resolutions are clearly erroneous." *Valley Towing Serv., Inc. v. S.S. American Wheat, Freighters, Inc.,* 618 F.2d 341, 346 (5th Cir.1980); *see also* Fed.R.Civ.P. 52(a). "If the district court's findings are plausible in light of the record viewed in its entirety, we may not reverse even if we would have weighed the evidence differently and arrived at a contrary conclusion." *Frota Oceanica Brasileira, S.A. v. M/V Alice St. Philip,* 790 F.2d 412, 414 (5th Cir.1986) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985)). Having viewed the record, we cannot conclude that the district court's factual findings were clearly erroneous.

B. The Fault of Bowmech

When a moving vessel collides with a stationary object, the moving vessel is presumed to be at fault. *The Oregon,* 158 U.S. 186, 192-93, 15 S.Ct. 804, 806-08, 39 L.Ed. 943 (1895); *American Petrofina Pipeline Co. v. M/V Shoko Maru,* 837 F.2d 1324, 1326 (5th Cir.1988); *Pennzoil Producing Co. v. Offshore Express, Inc.,* 943 F.2d 1465, 1471 (5th Cir.1991). This presumption operates to shift the burden of producing evidence and the burden of persuasion onto the moving vessel. *American Petrofina Pipeline,* 837 F.2d at 1326. The moving vessel may rebut the presumption by showing, with a preponderance of the evidence, that the allision was the fault of the stationary object, that the moving ship acted with reasonable care, or that the allision was an unavoidable accident. *Id.*

In this case, the district court applied the presumption and found that it was not rebutted. The district court, going further than required, also found that Bowmech's negligence caused the accident. Either finding alone would have been sufficient. And despite Bowmech's objections, we are

persuaded that both findings are adequately supported by the record.

Bowmech's first objection is that the district court erred in applying the presumption of fault against it. Citing dicta in a Fifth Circuit case, Bowmech urges that where the stationary object is an obstruction to navigation, the presumption of negligence created when a moving vessel strikes a stationary object disappears once evidence of the obstruction is presented. *See S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 165 n. 3 (5th Cir.1979) (citing *Pennsylvania R.R. v. S.S. Marie Leonhardt,* 320 F.2d 262, 264 (3rd Cir.1963)), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). Bowmech then argues that the presumption should not have been applied in this case because the pipeline was an obstruction to navigation. We rejected this disappearing presumption argument in *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790, 795 n. 3 (5th Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 518 (1978), stating that the presumption of fault affects the burden of proof, not merely the burden of going forward with the evidence. Furthermore, we have also stated that "when a mariner knows of obstructions to navigation, he must avoid them." *Pennzoil,* 943 F.2d at 1470. As Brunet, the mariner in this case, was aware of the pipeline's presence, it was appropriate to erect the presumption of fault against Bowmech.

Next, Bowmech argues that the district court erred in finding that the allision was its fault. Given that the KAREN ELIZABETH commenced her voyage with knowledge of the forecast for heavy winds, and that the she continued her voyage despite knowledge of the forecast for heavier winds and the presence of a gas pipeline, the district court was not clearly erroneous in finding that the KAREN ELIZABETH was negligent.[4]

---

[4]The voyage commenced around 2:00 a.m. on January 18, 1993. The accident occurred at about 2:00 p.m. on January 18, 1993. As of 3:30 p.m. and 9:30 p.m. on January 17, the weather forecast for the area was:

> Tonight ... East to Northeast winds near 15 knots. Seas 3 to 4 feet. Choppy in protected water.

> Friday and Friday night ... East winds near 20 knots. Seas 4 to 6 feet. Rough in protected water. Scattered showers and few thunderstorms.

As of 3:30 a.m. on January 18 (90 minutes after departure), the weather forecast was:

> Small craft advisory in effect.

C. Limitation of Liability

Bowmech contends that it should have been entitled to limit its liability under the maritime Limitation of Liability Act which allows the shipowner to limit its liability for any loss or injury involving the vessel to the value of the vessel and its freight. 46 U.S.C.App. § 183(a). Under the Act, a party is entitled to limitation only if it is "without privity or knowledge" of the cause of the loss. *Id.* When the shipowner is a corporation, knowledge is judged by what the corporation's managing agents knew or should have known with respect to conditions or actions likely to cause the loss. *Pennzoil,* 943 F.2d at 1473-74. The burden is on the shipowner to prove lack of knowledge or privity of the negligent activity or unseaworthy condition that caused the accident. *Id.* at 1474.

Bowmech contends that navigational decisions, including decisions regarding weather conditions en route, are delegated to the wheelman of the KAREN ELIZABETH and are not within the privity or knowledge of Bowmech. We disagree. The record indicates that on the day of the

---

Today ... East to Northeast winds near 20 knots. Seas 5 to 8 feet. Choppy in protected waters. Winds and seas higher near scattered showers and thunderstorms.

Tonight ... East to Northeast winds near 20 knots. Seas 5 to 8 feet. Choppy in protected waters. Winds and seas higher near scattered showers and thunderstorms.

As of 9:30 a.m. (four and a half hours before the accident), the weather forecast was:

Small craft advisory in effect.

This afternoon ... East winds 20 to 30 knots. Seas 5 to 7 feet. Rough in protected waters. Winds and seas higher near scattered showers and thunderstorms.

Tonight ... East to Southeast winds 20 to 25 knots. Seas 5 to 8 feet. Rough in protected waters. Winds and seas higher near scattered showers and thunderstorms.

As of 11:15 a.m. (less than three hours before the accident), the weather forecast was:

Small craft advisory in effect.

This afternoon ... East winds 20 to 30 knots. Seas 6 to 9 feet. Rough in protected waters. Winds and seas higher near scattered showers and thunderstorms.

Tonight ... East to Southeast winds 20 to 25 knots. Seas 5 to 8 feet. Rough in protected waters. Winds and seas higher near scattered showers and thunderstorms.

accident Bowmech's managing officer, Chris Bowler, knew that the vessel was being operated in high winds. He also knew that the vessel routinely operated in high winds and occasionally became windbound. Such knowledge vitiates the right to limit liability. *See id.,* 943 F.2d at 1474.[5]

D. The Fault of United Gas

Bowmech contends that the trial court erred in finding that United Gas was not at fault. First, it argues that the court should have applied the rule of *The Pennsylvania*[6] against United Gas. Under the rule of *The Pennsylvania,* the owner of a pipeline that is in violation of a statutory rule intended to prevent allisions is presumed to be at fault and bears the burden of proving that the violation did not cause the allision. *See Pennzoil,* 943 F.2d at 1471-72; *see also Sheridan Transp. Co. v. United States,* 897 F.2d 795, 799 (5th Cir.1990). Bowmech alleges that the rule of *The Pennsylvania* applies because United Gas violated various permits and regulations by failing to maintain sufficient cover over the pipeline and failing to perform adequate inspections. Because both sides presented substantial evidence regarding the amount of cover on the pipeline, the district court's finding that Bowmech failed to prove that the cover was insufficient cannot be clearly erroneous. *See Frota Oceanica Brasileira,* 790 F.2d at 414-15. Furthermore, we have thoroughly reviewed Bowmech's claims that United Gas failed to inspect the pipeline in accordance with the regulations and are convinced that the district court properly found that there was no statutory violation. Therefore, the burden of proving that United Gas was at fault properly remained on Bowmech.

Next, Bowmech argues that United Gas was negligent in three respects: (1) there was insufficient cover over the pipeline; (2) the pipeline inspections were inadequate; and (3) the signs marking the pipeline's presence did not warn that the pipeline was exposed. As discussed above, there was substantial evidence supporting the district court's finding that Bowmech did not prove that there was insufficient cover over the pipeline or that the inspections were inadequate. Finally, as the

[5]The district court also found that Bowmech had delegated enough responsibility to Brunet and Gremillion to make them managing agents of Bowmech. Bowmech argues that the delegation of navigational decisions is not sufficient to make Brunet and Gremillion managing agents. We need not address this contention because we affirm the district court's finding that Bowmech had knowledge through Bowler.

[6]86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874).

district court found that there was sufficient cover over the pipeline, there was no need for a sign warning of an exposed pipeline.

E. Fault of Gremillion

Bowmech contends that the district court erred by not deciding the issue of Gremillion's comparative fault. We disagree. The record indicates that the district court severed this issue along with Gremillion's personal injury claim against Bowmech.[7] The trial court has broad discretion to sever issues to be tried before it. *See* Fed.R.Civ.P. 21. The trial court later dismissed Gremillion's claim as moot so it could proceed to trial in state court where it was originally filed. Finding no abuse of discretion, we reject Bowmech's contention.

II. Denial of Bowmech's Motion to Exclude Evidence of Drug and Alcohol Use

Before the bench trial on liability, Bowmech moved *in limine,* to exclude from evidence prior convictions and instances of drug and alcohol use by the crew of the KAREN ELIZABETH and the results of a drug test performed on Brunet two days after the accident. The district court denied Bowmech's motion. Bowmech contends that the evidence should have been excluded under Rule 404(b) of the Federal Rules of Evidence, which provides that evidence of other crimes, wrongs, or acts is not admissible to prove that a person acted in conformity therewith.

We review the admission of evidence for abuse of discretion and will reverse only if the challenged ruling is erroneous and affects a substantial right of the party. *Southern Pacific Transp. Co. v. Chabert,* 973 F.2d 441, 448 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993). We find that the district court did not abuse its discretion in admitting the evidence. Under Rule 404(b), evidence of other crimes, wrongs, or acts is admissible if offered for purposes other than to prove action in conformity therewith. Fed.R.Evid. 404(b). In this case, the evidence of prior convictions and instances of drug and alcohol use were offered to show that Bowmech was negligent in hiring its crew. The evidence of Brunet's post-accident drug test was offered to show that Brunet was under the influence of drugs at the time of the accident and that this was the cause of the accident. Furthermore, even if the court had abused its discretion in admitting

---

[7] *See supra* note 3.

the evidence, Bowmech was not substantially prejudiced because the court expressly found that the crew's drug use did not cause the allision.

## III. Damages

Following the trial on damages, the district court awarded United Gas $270,000 for permanent repairs, including $220,000 to install a new pipeline crossing and $50,000 for removal of the existing crossing. The district court's determination on the amount of damages may not be overturned unless clearly erroneous. *Todd Shipyards Corp. v. Turbine Serv., Inc.,* 674 F.2d 401, 405 (5th Cir.), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

Bowmech complains that the award for installing a new pipeline places United Gas in a better position than before the accident. Bowmech contends that the court should have reduced the award to install a new pipeline crossing by the estimated depreciation on the old pipeline crossing. We disagree. In *Freeport Sulphur Co. v. S.S. Hermosa,* 526 F.2d 300, 305-06 (5th Cir.1976), we recognized that depreciation should not be applied in every instance. "[W]here the repairs do not extend the useful life of the property as it existed just before the collision, there should be no deduction for depreciation." As an example, we cited *Oregon v. Tug Go-Getter,* 468 F.2d 1270 (9th Cir.1972). In *Oregon,* the defendant's barge collided with and caused severe damage to the south pier of the plaintiff's bridge. The Ninth Circuit held that the cost of repairs should not be reduced by depreciation on the old pier. The court reasoned that the repairs did not add to the life expectancy because the pier was an integral part of the bridge structure, and regardless of the pier's condition it would have to be replaced when the bridge required replacement.

The same is true here. The pipeline crossing is a small part of a much larger pipeline system. According to expert testimony at trial, the new crossing will have to be replaced when the pipeline is replaced. Moreover, there was no evidence that the crossing was scheduled for early replacement. Therefore, there should be no deduction for depreciation.

Second, Bowmech contends that because the new pipeline will be placed at a depth of fifty feet below the mudline, United Gas will get an erosion-free crossing. Bowmech argues that this is a betterment that should have been deducted from the damages. The record does not contain

evidence regarding the value of the an erosion-free crossing. Nor does the record indicate that this issue was raised in the district court. Based on our review of the record, we find no error.

Finally, Bowmech contends that the district court erred in awarding damages for removal of the old pipeline because removal is not necessary. The record supports the finding that removal was necessary.

CONCLUSION

For the foregoing reasons the district court's judgment is

AFFIRMED.