IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2008

Charles R. Fulbruge III
Clerk

No. 08-30101

CARGILL, INCORPORATED

Plaintiff-Appellee

v.

KOPALNIA RYDULTOWY MOTOR VESSEL, her engines, tackle, apparel, etc., in rem; CEPHEUS SHIPPING, LTD.; POLISH STEAMSHIP CO.; POLSKA ZELUGA MORSKA, in personam

Defendants-Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
2:06-CV-6670

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The issue on appeal involves whether depreciation is to be assessed on the costs of repairing a section of Cargill, Incorporated's ("Cargill") wharf on the Mississippi River in Westwego, Louisiana. The M/V KOPALNIA RYDULTOWY ("the Ship") damaged a small portion of the wharf in September 2005 when it was docked negligently. Appellants challenge the calculation of damages awarded by the district court because they represent the full, undepreciated cost

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of repairs and attorneys' fees. For the following reasons, we AFFIRM the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the accident are not in dispute. In September 2005, the Ship collided with Cargill's wharf on the Mississippi River in Westwego, Louisiana. Prior to the collision, the wharf was fully functional. The Ship struck a portion of the wharf that includes a walkway bridge used to reach ships docked at Cargill's wharf. Cargill replaced the damaged components. In September 2006, Cargill filed suit against Kopalnia for damage to its wharf as a result of the negligent docking and landing of the Ship.

In addition, on the date of the accident, the Master of the Ship signed a Berth Application for the use of the Cargill Westwego Elevator (the "Berth Application") before bringing the Ship into the wharf. Pursuant to the Berth Application, the Master bound the Ship and her owner to the terms of the published tariff concerning use of the Cargill berth at the Westwego Elevator ("Tariff"). The Berth Application and the incorporated Tariff both contained indemnity provisions. The Tariff's indemnity clause included the reimbursement of Cargill's attorneys' fees for any injury to its property arising out of the acts or omissions of the Ship or her owners.

During a bench trial, the Ship's owners and operators, Cepheus Shipping, Ltd., Polish Steamship Co., and Polska Zeluga Morska (collectively with the Ship, "Kopalnia"), stipulated that the negligence of the Ship's docking maneuver and resulting hard landing caused the collision and resulting damage to an eighty-foot long section of Cargill's 1,440-foot long wharf. In addition to liability, the parties stipulated that the actual cost of repairs was $408,328.94. The parties proceeded only as to the correct measure of damages–specifically, whether those repair costs should be depreciated for any extension of the useful life of the structure.

In a December 19, 2007 Order, the district court held that repair costs should not be depreciated, awarding the full repair costs to Cargill in damages, and further holding that Cargill was entitled to indemnification of its attorneys' fees and costs from Kopalnia under the Berth Application, later determined to be $66,479.87. Kopalnia appeals the measure of damages and award of fees.

## CARGILL'S DAMAGES

Kopalnia argues that the district court misapplied the law and reached an erroneous factual finding when it determined that repair costs should not be depreciated because the damaged walkway was "essential" to Cargill's wharf. Kopalnia asserts that the district court was required to first analyze the extent of the section's prior deterioration and to what extent the repairs extended that walkway section's useful life. Cargill responds that the district court applied the law correctly, and its factual finding that the repaired wharf walkway was an "essential element" of Cargill's wharf is not clearly erroneous.

This court reviews de novo the legal standard applied by the district court to calculate damages. See Harken Exploration Co. v. Sphere Drake Ins. PLC, 261 F.3d 466, 477 (5th Cir. 2001) (stating issues of law with respect to the determination of damages are reviewed de novo). We review findings of fact for clear error. FED. R. CIV. P. 52(a); Bursztajn v. United States, 367 F.3d 485, 490 (5th Cir. 2004).

Cargill is entitled to the cost of repairing its wharf to its pre-tort condition. See Freeport Sulphur Co. v. S.S. Hermosa, 526 F.2d 300, 304 (5th Cir. 1976) (explaining that the purpose of damages for maritime tort is to place the injured party as nearly as possible in the condition it would have occupied if the accident had not occurred). When repairs improve a damaged structure to a better than pre-tort condition, thus providing an extra benefit to the tort victim, a measure of depreciation is applied to the repairs costs to reduce damages. Id. at 305 ("[W]here the expected useful life of the property after repairs is the same as it

was at the time of its acquisition by the plaintiff, the straight-line depreciation formula should be applied").

Clearly, depreciation does not apply in every case. Id. at 305. "[W]here the repairs do not extend the useful life of the property as it existed just before the collision, there should be no deduction for depreciation." Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505-06 (5th Cir. 1994) (quoting Freeport Sulphur, 526 F.2d at 305-06). If the repaired wharf walkway is "integral" to Cargill's wharf–because the repaired section will not be replaced independently and/or retained when the rest of the wharf is rebuilt–and the repairs do not extend the useful life of the entire wharf, repair costs will not be depreciated. See Brunet, 15 F.3d at 505-06 (holding that repair costs not subject to depreciation because damaged pipeline crossing was part of a larger system and would require replacement when larger pipeline system was replaced).

The applicable depreciation inquiry is whether the instant walkway will be replaced again when the wharf as a whole, or at least the section of the wharf of which the walkway is a part, reaches the end of its useful life. See Brunet 15 F.3d at 506; Freeport Sulphur, 526 F.2d at 304-06. If so, Cargill will not receive the benefit of any useful life extension, and no depreciation should be taken. Id.; see also Oregon v. Tug Go-Getter, 468 F.2d 1270, 1273-74 (9th Cir. 1972) ("Under these circumstances it is of no significance that the pier could be separately repaired or even replaced. (So could a single wall of a building.)") (emphasis added); BP Exploration, 147 F. Supp. 2d at 341-42 (applying Brunet and holding no depreciation applicable, because "when the entire pipeline is eventually replaced, it is unlikely that these pieces of pipes would be left for replacement even further in the future, and if that were the course of action, any savings would be de minimis" because the particular repaired pipes were integral to the facility and their replacement added no useful life to the facility).

The district court, applying Brunet, determined that in order to return Cargill's wharf to its pre-allision status, Cargill should be awarded the costs of rebuilding the damaged walkway without deduction for depreciation. The court found that the walkway was an essential part of the wharf, and thus no depreciation was warranted. See Cargill v. M/V KOPALNIA RYDULTOWY, Civ. No. 06-6670, Order (E.D. La. Dec. 19, 2007). Because the district court applied the correct legal standard to calculate damages, we turn to its statement that the damaged walkway is "an essential part of the wharf," a finding of fact that the walkway will most likely be replaced when the wharf is replaced. A review of the record does not show this finding to be clearly erroneous.

Kopalnia points to testimony by Cargill's experts that it would not be necessary to replace the repaired walkway bridge when adjoining sections are eventually replaced. That alone does not indicate that walkway bridge is non-essential. Testimony from multiple engineering experts at trial established that repair of the components in the damaged section did not extend the useful life of the wharf, or even a significant subsection of the wharf. The record also establishes that the repaired walkway is a single 80-foot section of a 1440-foot structure. Cargill's consulting engineers also testified that they were unaware of any plans for Cargill to replace its wharf section by section. Based on the exhibits and testimony presented during the bench trial, it was not erroneous for the district court to find that Cargill will not rebuild the remaining 1360-feet (94%) of its wharf around a single repaired 80-foot section. Therefore, the district court ruling that depreciation does not apply to Cargill's repair costs was not clearly erroneous.

## ATTORNEYS' FEES

Kopalnia argues it is not liable for attorneys' fees because the Tariff's indemnity provision was not included in the text of the Berth Application. Kopalnia further argues that the two indemnity provisions (one in the Berth

Application and one in the incorporated Tariff) create an ambiguity. Neither argument is persuasive.

The interpretation of contract terms is a matter of law and is reviewed de novo. Thibodeaux v. Vamos Oil & Gas Co., 487 F.3d 288, 293 (5th Cir. 2007). Maritime contracts containing indemnity provisions are to be interpreted consistently with their plain meaning unless those provisions are ambiguous. See Weathersby v. Conoco Oil Co., 752 F.2d 953, 955 (5th Cir. 1984); Lirette v. Popich Bros. Water Transport, Inc., 699 F.2d 725, 728 (5th Cir. 1983). A contract is not ambiguous if "its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation." Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 n.6 (5th Cir. 2004). Where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.

The Berth Application signed by the Ship's Master clearly and expressly incorporates the Tariff, stating that use of the loading dock is subject to "the Rules and Regulations in the published tariff covering the handling of self-propelled vessels at the elevator named above, and applicant agrees to be bound by and comply with the provisions of said tariff." The relevant tariff is Cargill's Tariff No. 10, which provides that the "[v]essel owner will indemnify, defend, and hold harmless Cargill . . . from and against all losses . . . costs or expenses (including but not limited to attorneys' fees and court costs) . . . arising out of or resulting from: (i) the acts or omissions of [the Ship]." The Berth Application, a contract between Cargill and the Ship and her owner, expressly incorporates by reference the published Tariff, and therefore Kopalnia agreed to indemnify Cargill for attorneys' fees and costs in this action. The Tariff is clear, and it does not contradict the separate indemnity provision in the Berth Application or

otherwise create an ambiguity.  The district court's award of attorneys' fees is affirmed.

## CONCLUSION

The district court's finding that the walkway is an essential part of Cargill's wharf was not clearly erroneous, and the Berth Application requires indemnification of attorneys' fees by Kopalnia.  We thus AFFIRM the judgment of the district court.